IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO LUPIAN,<br><br>        Petitioner,<br><br>  v.<br><br>A.K SCRIBNER,<br><br>        Respondent.<br>_____ | No. C 03-1584 MMC (PR)<br><br>**ORDER DENYING PETITION FOR<br>A WRIT OF HABEAS CORPUS** |

On April 14, 2003, petitioner, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 6, 2003, the Court ordered respondent to show cause why the petition should not be granted based on the two claims in the petition. On November 4, 2003, respondent filed an answer, accompanied by a memorandum and exhibits. On May 10, 2004, petitioner filed a traverse, followed by two supplements thereto, filed February 5, 2005 and March 21, 2005, respectively.

## BACKGROUND

In Alameda County Superior Court, petitioner was charged with 16 felony counts arising from three separate incidents: three counts of kidnaping for robbery, three counts of

1 residential burglary, three counts of residential robbery, four counts of second degree
2 robbery, and three counts of possession of a firearm by an ex-felon.  Enhancements for the
3 use of a firearm and a prior felony conviction also were alleged.  On the sixth day of trial,
4 petitioner entered a plea of no contest to three counts of simple kidnaping and possession of a
5 firearm by an ex-felon, along with firearm enhancements, pursuant to a "package deal" with
6 petitioner's codefendant, John Gillogley ("Gillogley"), who entered a no contest plea to
7 similar charges.  Pursuant to the plea agreement, petitioner and Gillogley each were
8 sentenced to terms of 39 years and 8 months in state prison.

On appeal, petitioner's appellate attorney filed a "no-merits" brief pursuant to People v. Wende, 25 Cal.3d 436 (1979).  The California Court of Appeal affirmed, and the California Supreme Court denied petitioner's pro se petition for review.  A second petition for review in the California Supreme Court likewise was denied.

**FACTUAL BACKGROUND**

The charges arose from three separate incidents that took place in November 1999.[1]

On November 1, 1999, in Oakland, California, as Robert Armstrong ("Armstrong") was unlocking his front door, petitioner and Gillogley approached him from behind and forced him inside.  Petitioner pointed a chrome revolver at Armstrong while Gillogley took various electronic items.  Gillogley also took Armstrong's bank card and demanded the PIN code, which Armstrong supplied.  Gillogley left, and petitioner kept the gun on Armstrong.  Approximately 20 minutes later, petitioner spoke to someone outside the window, after which he taped Armstrong's ankles, gathered the electronic items, and left.  Armstrong freed himself and called the police, who later discovered that Gillogley had used the card at a bank and a drugstore.

On November 9, 1999, petitioner and Gillogley accosted John Turner ("Turner") in

---

[1] As there was no trial in this matter, the following factual background is derived from the probation report, which is attached to the Clerk's Transcript ("CT").  See Respt. Ex. 1-D.  Although petitioner intended to mount a defense at trial disputing these facts, in particular that he was not the person who participated in these crimes with Gillogley, when he pled guilty he admitted to his participation.  The charges to which he plead guilty were based upon the facts set forth in this background.

1 the parking lot of the hotel in Oakland where he was staying.  Petitioner showed Turner a
2 chrome revolver, as they led him to his hotel room.  Gillogley took Turner's wallet,
3 demanded his PIN code and loaded various items from the room into a suitcase.  Gillogley
4 left the room for approximately 20 minutes, during which time petitioner remained with his
5 gun pointed at Turner.  Gillogley returned and complained that he could only get $300 from
6 the bank.  Eventually, after holding Turner for two hours, Gillogley and petitioner bound him
7 with tape and telephone cords, and then left.  Turner freed himself from his bindings and
8 called the police, who subsequently learned that Gillogley had used Turner's bank card at
9 two banks and a gas station.

10 On November 14, 1999, petitioner approached David Keys ("Keys") on a street in
11 Berkeley, California.  Petitioner displayed a chrome revolver, and Gillogley took Keys's
12 wallet.  They forced Keys into the back of a nearby Chevrolet Suburban, which Gillogley
13 drove while petitioner sat in the back seat with his gun pointed at Keys.  Gillogley demanded
14 Keys's PIN code, and Keys told it to him.  Gillogley drove to two banks and a gas station, at
15 each of which he used the bank card.  Gillogley then drove petitioner and Keys to Keys's
16 apartment, forced Keys inside at gunpoint, and took Keys's electronic items and diving gear.
17 Gillogley then drove petitioner and Keys to a check-cashing business, where they forced
18 Keys to try to cash a check; Gillogley then drove to two different stores, where Gillogley and
19 petitioner forced Keys to buy electronic items, clothes, video games, and jewelry.  Finally,
20 Gillogley drove petitioner and Keys to Gillogley's girlfriend's house, where Keys was
21 released from the car.  In all, Keys was with petitioner and Gillogley for over four hours.

**DISCUSSION**

23 A.   Standard of Review

24 Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district
25 court may not grant a petition challenging a state conviction or sentence on the basis of a
26 claim that was reviewed on the merits in state court unless the state court's adjudication of
27 the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable
28 application of, clearly established Federal law, as determined by the Supreme Court of the

1 United States; or (2) resulted in a decision that was based on an unreasonable determination
2 of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §
3 2254(d).

B.  Issues Presented

   1.  Ineffective Assistance of Counsel

Petitioner contends he received ineffective assistance of counsel because his attorney failed to obtain alibi witnesses and an eyewitness identification expert to testify at trial. Where, as here, a defendant pleads guilty or no contest pursuant to the advice of counsel, the only challenge remaining for federal habeas relief is to the voluntary and intelligent character of the plea and the advice of counsel to enter the plea, by showing such advice was not within the range of competence demanded of attorneys in criminal cases. Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).[2] The two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), applies to challenges to pleas based on ineffective assistance of counsel. Hill, 474 U.S. at 58. The first half of the Strickland test is, as set forth in Tollett, whether the advice the petitioner received from counsel was within the range of competence demanded of attorneys in criminal cases. Id. at 58-59. To satisfy the second requirement of Strickland, a petitioner must show prejudice, i.e., he must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Here, as explained below, petitioner fails to meet the first Strickland requirement, because counsel's advice to plead no contest rather than to proceed with the trial does not fall below the standard of competence demanded of attorneys in criminal cases. Because petitioner's claim

---

[2] Petitioner also claims the trial court erred in denying his motion to substitute counsel. The denial of such motion, standing alone, is not a viable basis for federal habeas relief because the ruling occurred prior to the plea. See Haring v. Prosise, 462 U.S. 306, 319-20 (1983) (holding guilty plea forecloses consideration of claims relating to the deprivation of constitutional rights occurring before plea of guilty). To the extent petitioner is arguing the denial of the motion resulted in his receiving ineffective assistance of counsel in violation of his Sixth Amendment right to counsel, any such claim, as explained below, fails. See Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir. 2000) (en banc) (holding where trial court denied motion to substitute counsel, ultimate inquiry in federal habeas proceeding is whether petitioner's Sixth Amendment right to counsel was violated).

4

fails as to the first prong, the Court need not address whether the claim also fails as to the second. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998) (holding federal court, when considering ineffective assistance claim on habeas review, need not address prejudice prong of Strickland test where petitioner cannot establish incompetence under first prong).

At the outset, the Court notes petitioner does not identify herein the alleged alibi witnesses or state whether they would have been willing to testify, let alone set forth the testimony they would have provided. See Dows v. Wood, 211 F.3d 480, 487 (9th Cir. 2000) (rejecting claim that counsel was ineffective in failing to present alibi witness where petitioner failed to prove witness existed or testimony such witness would have provided). Moreover, the record herein indicates that trial counsel investigated a potential alibi defense, but found no helpful alibi evidence. At the hearings on petitioner's three requests to substitute counsel, defense counsel explained that she hired an investigator who investigated the potential alibi asserted by petitioner. See Reporter's Transcript ("RT") 1/22/01 at 27, and 3/12/01 at 24-26.[3] As part of this investigation, the investigator interviewed an individual petitioner had identified as a witness able to provide alibi evidence; when the investigator interviewed the individual, however, the individual did not confirm the alibi.[4] RT 1/22/01 at 29. The investigator also interviewed two other persons petitioner had identified as being helpful to the defense;[5] defense counsel testified that, based on their interviews, those individuals had no helpful testimony to offer. RT 1/22/01 at 27; 3/12/01 at 29. The record thus demonstrates that counsel did investigate petitioner's alibi defense but found no useful testimony to present. Petitioner does not identify any additional steps defense counsel could have taken to procure such testimony, and, as noted above, he fails to identify any alleged alibi witnesses or state what testimony they could have provided.

---

[3] The Reporter's Transcripts of the hearings on petitioner's motions to substitute counsel, dated January 22, 2001, March 12, 2001 and March 22, 2001, are included in Respondent's Exhibit 3. The Reporter's Transcript of the other trial court proceedings are included in Respondent's Exhibit 2.

[4] The name of this witness is not provided either in the record or in the parties papers.

[5] Neither the record nor the papers filed herein indicates whether petitioner asserted these individuals would have supplied alibi evidence, as opposed to some other kind of helpful evidence.

5

With respect to an expert on eyewitness identification, defense counsel testified at the hearings on petitioner's motion to substitute counsel that, in her experience, such an expert is not useful when the eyewitness has seen the suspect for more than a very short period of time. RT 3/12/01 at 32. Defense counsel further testified she decided an identification expert would not be helpful to petitioner in this case, and indeed could be harmful, in light of each victim's extensive opportunity to view the perpetrators, specifically, Armstrong for half an hour, Turner for at least two hours, and Keys for at least four hours. Id. Petitioner does not provide any basis for questioning trial counsel's assessment of an identification expert's value.

In short, as the record indicates, there was no testimony from alibi witnesses or an identification expert that would have helped petitioner at trial. Petitioner presents no other reasons for trial counsel's advising him to take the case to verdict, after which he would have faced up to three consecutive life sentences if he had been convicted of the charges. In sum, counsel's decision to advise petitioner to plead guilty rather than to proceed with the trial did not fall below the standard of competence demanded of attorneys in criminal cases. Accordingly, petitioner's claim of ineffective assistance of counsel fails.

    2.    <u>Literacy and Language Skills</u>

In his second claim, petitioner asserts his literacy skills and ability to understand English are limited, and, for this reason, both his plea and his waiver of his right to counsel at sentencing were invalid. With respect to the challenge to his plea, petitioner's claim is barred. As explained above, petitioner pled no contest pursuant to the advice of counsel, and thus his only available challenge to his conviction is that counsel's advice to enter such plea was deficient. See <u>Hill</u>, 474 U.S. at 56; <u>Tollett</u>, 411 U.S. at 267. With respect to his challenge to his waiver of counsel at sentencing, even assuming such claim is not similarly barred by <u>Hill</u> and <u>Tollett</u>, which address challenges to a conviction rather than to a sentence, the claim, as discussed below, nonetheless fails.

In order to waive the trial rights relinquished upon a change of plea, or the right to counsel, the defendant must be competent, and the waiver must be knowing and voluntary.

6

Godinez v. Moran, 509 U.S. 389, 400-02 (1993). The competency determination is the defendant's "*ability* to understand the proceedings," and the knowing and voluntary inquiry is whether the "defendant actually *does* understand the significance and consequences of" his decision. Id. at 401 n.12 (emphasis in original). The record in this case indicates both that petitioner was able to understand the proceedings, and that he in fact did understand the significance and consequences of his decisions.

The trial court record indicates that petitioner had more than sufficient literacy skills. At the hearing on petitioner's motion to substitute counsel, petitioner told the trial court that he had read the police reports. RT 1/22/01 at 42. Thereafter, in his motion to represent himself at sentencing, petitioner wrote: "I certify to the Court that I can read and write." CT 562-63. At the sentencing hearing, he requested five minutes to "read" the probation report, after which he told the court he had reviewed it, and then proceeded to argue about its contents. RT 577-78. Additionally, he initialed and signed the waiver forms for his guilty plea and for self-representation at sentencing, indicating he had read them. CT 523-24, 557. Petitioner also filed, pro se, several written motions, as well as letters in support of his motions, and a written request for a certificate of probable cause on appeal, citing a number of cases. CT 585-86.

The record similarly reflects the adequacy of petitioner's English language skills. Petitioner appeared at all court proceedings without an interpreter; he never requested an interpreter or stated he did not understand the proceedings because of any deficiency in his language skills. To the contrary, during the hearings on the change of plea and his motion for self-representation, petitioner stated that he understood all of the advisements given to him by the trial court. RT 536-41, 551, 953-54. At those hearings, petitioner confirmed, in English, that he wanted to change his plea and to waive counsel, and that he was making such decisions because they were "in [his] own best interests," and that he understood all of the rights he was waiving. RT 542-43, 953-54, 956. Further, the transcripts of the hearings on his three motions to substitute counsel reveal that petitioner engaged in extensive discussions with the trial court in English. See generally RT 1/22/01, 3/12/01, 3/22/01.

7

Petitioner's statements therein demonstrate he could speak English well and that he understood both the trial judge and the attorneys.  Id.

In his traverse, petitioner states his English language and literacy skills were not sufficient for purposes of his understanding all of the "law procedures," that he has received help from other inmates on his written legal papers, and that he "flunked" several grades in school.[6]  Petitioner cites no authority, and this Court is aware of none, to the effect that a defendant's poor performance in school or his lack of expertise in legal matters precludes him from entering a guilty plea or waiving counsel.  To the contrary, the Supreme Court has held that a defendant's legal skills are "'not relevant' to the determination whether he is competent to waive his right to counsel."  See Godinez, 509 U.S. at 400 (citing Faretta v. California,422 U.S. 806 (1975)); see also id. at 396, 398-400 (holding level of competency required to plead guilty is same as that required to waive counsel).  As noted, petitioner's literacy and English language skills were such that he was able to and did understand the significance and consequences of his plea and waiver of counsel.  In sum, the record demonstrates petitioner was competent to change his plea and waive counsel, and that those decisions were knowing and voluntary.  Consequently, habeas relief is not available on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: June 26, 2006

*Maxine M. Chesney*
MAXINE M. CHESNEY
United States District Judge

---

[6]Petitioner's education ended in the tenth grade.  RT 954.

8